UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00396 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| CONTINENTAL AUTOMOTIVE | ) | |
| SYSTEMS, INC., CONTITECH NORTH | ) | |
| AMERICA, INC., and CONTINENTAL | ) | |
| TIRE THE AMERICAS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

Nissan North America, Inc. ("Nissan") has filed a Motion to Amend Complaint (Docket No. 35), to which ContiTech North America, Inc. ("ContiTech"), Continental Automotive Systems, Inc. ("CAS"), and Continental Tire the Americas, LLC ("Continental Tire") have filed a Response (Docket No. 38), and Nissan has filed a Reply (Docket No. 39). For the reasons set out herein, that motion will be granted in part and denied in part.

**I. BACKGROUND[1]**

Nissan manufactures cars, and the defendants manufacture parts for cars. (Docket No. 35-1 ¶¶ 10–12.) At some point no later than July 29, 2002, Nissan and Continental Teves, Inc. ("Continental Teves"), a predecessor of CAS, came to share a mutual desire to draft and finalize a Master Purchase Agreement ("MPA") that would govern sales of parts from Continental Teves to Nissan. (*Id.* ¶ 12; Docket No. 38-4 at 2.) In the meantime, however, from 2002 until late October

---

[1] Except where otherwise indicated, the facts are taken from Nissan's proposed Amended Complaint. (Docket No. 35-1.)

1

2004, Nissan regularly purchased and used Continental Teves parts without the parties' finalizing an MPA. Nissan's purchases during this time period appear, at least generally, to have been made pursuant to written purchase orders. Nissan has apparently been able to locate some of those purchase orders, from September 2003 through May 2004, related to Nissan's purchase of braking system components from Continental Teves. (Docket No. 35-1 ¶ 15.) According to Nissan, those purchase orders set forth written Terms and Conditions, which included a provision stating that, "[i]n addition to what is specified elsewhere on the document, Seller's liability shall also include . . . damage or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by Seller." (*Id.* ¶ 16.) The Terms and Conditions stated that they "shall be construed and governed according to the laws of the State of Tennessee." (*Id.* ¶ 17.)

On October 22, 2004, Nissan and the Continental companies finally entered into an MPA, which refers to Continental Teves and other Continental companies collectively as the "Supplier." (*Id.* ¶ 19; see Docket No. 1-1 at 22.) The MPA stated that it "shall be governed by and construed in accordance with the laws of the state of Tennessee." (*Id.* ¶ 21.) The MPA included the following indemnity provision:

> In addition to what is specified elsewhere in this Agreement, Supplier shall indemnify and hold harmless Nissan and its dealers (to the extent indemnified by Nissan or Nissan Affiliates), its Affiliates and their dealers (to the extent indemnified by Nissan or Nissan Affiliates), and their respective officers[,] directors and employees (the "Nissan Indemnified Parties"), in full against all loss, liability, damages, costs and all expenses, including attorney fees and expert fees, arising out of claims or lawsuits for personal injury, property damage or economic damage alleging:
>
> > (1) defects in design (to the extent that supplier has furnished the design), warnings (to the extent that Supplier has furnished the warnings), materials, workmanship and performance . . . .

(*Id.* ¶ 24.)

One of the products that Continental Teves had been providing to Nissan was a "Delta Stroke Sensor," or "DSS," that was used in the brake system of the 2004 Nissan Infiniti QX56. Continental shipped some number of Delta Stroke Sensors to Nissan, which installed them and released the cars for sale to the general public. According to Nissan, the Continental companies began shipping the DSS to Nissan before the MPA was finalized and continued providing Nissan with the DSS after the signing of the MPA. (*Id.* ¶ 23.)

In June and November 2011, Nissan was sued by putative class action plaintiffs in, respectively, the U.S. District Court for the Northern District of California and the Circuit Court of Miller County, Arkansas. The California-based case is known by the parties as the "*Banks* Action," and the Arkansas-based case is known as the "*West* Action," after the surnames of the cases' respective plaintiffs. (*Id.* ¶¶ 25–26.) The plaintiffs in both cases alleged that the braking system of the 2004 Infiniti QX56 had been defective, leading to a loss in braking power. Central to those allegations were alleged defects with the DSS. (*Id.* ¶ 27.) Nissan requested that the Continental companies defend and indemnify Nissan in the lawsuits. The Continental companies agreed to do so and funded the defense and settlement costs of the *Banks* and *West* Actions, which are now resolved. (*Id.* ¶ 32.)

Later, Nissan and CAS were named as defendants in three consolidated non-class action cases involving the wrongful deaths of Saida Mendez-Bernadino and her two children in a 2012 automobile collision involving a 2004 Infiniti QX56. (*Id.* ¶ 34; Docket No. 38-2 ¶ 1.) The parties refer to that lawsuit as the "*Bernadino* Lawsuit" and refer to the specific 2004 Infiniti QX56 involved as the "Subject Vehicle." (Docket No. 35-1 ¶¶ 34–35.) The plaintiffs in the *Bernadino* Lawsuit alleged that the fatal collision had been caused by the Subject Vehicle's DSS. (*Id.* ¶ 36.)

Unlike in the *West* and *Banks* Actions, the Continental companies refused to defend or indemnify Nissan with regard to Nissan's portion of the *Bernadino* claims, and, shortly before the case went to trial, CAS settled the claims against it. (*Id.* ¶ 42.) Nissan went to trial, where a jury found that the defective DSS had been a substantial factor in the collision. The jury awarded judgment against Nissan for slightly less than $25 million. (*Id.* ¶ 43.) The Continental companies have taken the position that they do not have an indemnification obligation to Nissan with regard to the *Bernadino* Lawsuit because the Subject Vehicle was assembled and shipped before Nissan and the suppliers entered into the MPA. (*Id.* ¶ 51.)

On April 5, 2019, Nissan sued the defendants in Rutherford County, Tennessee Circuit Court, seeking indemnification for its liability in the *Bernandino* Lawsuit. (Docket No. 1-1 at 7.) On May 14, 2019, Continental filed a Notice of Removal in this court. (Docket No. 1.) Nissan initially contested removal on the ground that Continental had waived its removal rights (Docket No. 17), but it ultimately withdrew its remand request "in order to avoid unnecessary delay in the adjudication of the merits of Nissan's claims." (Docket No. 30 ¶ 2.)

On September 4, 2019, Nissan filed its Motion to Amend Complaint, seeking leave to amend its Complaint in four ways:

1. To allege additional facts regarding the parties' course of dealing before and after the finalization of the MPA;
2. To attach purchase orders and other documents mentioned in its pleadings;
3. To allege that Nissan's insurer, Sompo Japan Nipponkoa Insurance Inc. ("Sompo"), which would have subrogation rights with regard to any recovery by Nissan, ratifies and agrees to be bound by Nissan's prosecution of this litigation; and
4. To add common law claims for indemnity and contribution.

(Docket No. 35 at 1.) The defendants oppose the motion, except with regard to the addition of facts related to Sompo's ratification of Nissan's actions, on which the defendants take no position. (Docket No. 38.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course either (a) within twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of court. Fed. R. Civ. P. 15(a)(2). Where it is requested, the court should "freely" give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A motion to amend, however, may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman*, 371 U.S. at 182) (emphasis omitted). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382–83 (6th Cir. 1993)).

## III. ANALYSIS

The defendants have not identified any bad faith or undue delay related to Nissan's motion. Moreover, given the early stage of this litigation, there is little reason to expect that the defendants

would experience significant prejudice if the motion were granted. The defendants argue, rather, that Nissan's proposed amendments should be rejected as futile for three reasons: (1) Nissan has failed to plead its allegations with the level of specificity required by Fed. R. Civ. P. 8; (2) Nissan's indemnity claim is barred by Tennessee or California law, whichever one applies; and (3) contribution is unavailable as a form of recovery in a breach of contract action.

### A. Failure to Plead with Specificity

#### 1. Group Pleading.

The defendants first argue that Nissan has failed to plead its allegations with sufficient specificity because the Amended Complaint, throughout its allegations, refers to the Continental companies as a collective entity, without identifying specific grounds for liability with regard to each defendant. Nissan responds that the defendants or their predecessor entities referred to themselves in the same collective manner in the MPA and that the Amended Complaint is expressly seeking to obtain indemnification on the terms contemplated by the MPA.

The defendants are correct that so-called "group pleading" of defendants, without differentiating between them in terms of individual culpable conduct, can sometimes result in a lack of clarity. The practice is particularly frowned upon in cases that are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). *See Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming district court's conclusion that plaintiffs had failed to satisfy the Rule 9(b) particularity requirement because the plaintiffs "had not alleged with specificity who had made particular misrepresentations and when they were made but rather . . . had articulated general averments of fraud attributed to 'the defendants'"); *but see In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023, at *3 (N.D. Ohio June 13, 2019) (finding that Rule 9(b) particularity requirement was met, despite group pleading, because

requiring duplicative individual averments was unnecessary). Nissan's allegations, however, are not subject to Rule 9(b), only to Rule 8's requirement that a plaintiff set forth facts "with sufficient specificity to state a claim for relief that is plausible on its face." *Bedford v. Michigan*, 722 F. App'x 515, 517 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

At least with regard to some types of allegation, there is a point at which indiscriminately lumping defendants together will cause a Complaint to fail even Rule 8's comparatively lenient standard. *See Colson v. City of Alcoa, Tenn.*, No. 3:16-CV-377, 2017 WL 1730911, at *4 (E.D. Tenn. May 2, 2017) (collecting cases). There is, however, no categorical rule against describing defendants—particularly affiliated corporate defendants with a history of acting in concert—by using collective language, if doing so is appropriate in the context of a particular case. Indeed, it is common for plaintiffs, who often lack information about the internal division of responsibilities in corporate families, to name several affiliated corporate defendants collectively, with the expectation that their understanding of the corporate family will be enhanced in discovery.

The court does not find the plaintiffs' decision to plead liability collectively to be inherently fatal to their proposed Amended Complaint, especially given that the collective responsibility of the Continental companies is contemplated by the MPA itself. With regard to Nissan's theories of liability that arise from duties outside the four corners of the MPA, Nissan is acting within ordinary practice by identifying the corporate entities that are reasonably likely, based on its understanding, to be appropriate defendants. It might turn out, after discovery, that some grounds for recovery apply to one defendant but not others. At the pleading stage, however, Nissan is not required to foresee how that issue will be resolved.

## 2. Identification of Specific Indemnity Provision

The defendants argue next that Nissan has failed to plead its allegations with specificity because it has failed to identify the specific indemnity provision on which it relies. This argument fails. Nissan provides two potential written contractual foundations for an indemnity obligation on behalf of the Continental companies: first, the indemnity provision of the MPA itself; and then, if the court holds that the MPA does not apply, the indemnity provision of Nissan's purchase order Terms and Conditions. (Docket No. 35-1 ¶ 38.) Reading somewhat between the lines, the defendants' argument is not really about specificity of pleading, but about Nissan's potential inability to provide facts in support of its claims. Specifically, it appears that Nissan has been either unable to locate or unwilling, so far, to produce a copy of the purchase order, including Terms and Conditions, for the specific DSS that was placed in the Subject Vehicle. Any factual issue regarding the purchase order or lack thereof, however, is not appropriate for consideration under Rule 8. On the face of its Amended Complaint, Nissan argues that it can establish, factually, that the parties' course of dealing contemplated indemnity under the MPA's terms for the relevant DSS device or, in the alternative, that it can establish that the sale of that device was governed by the Terms and Conditions. Those allegations are sufficient to satisfy Rule 8.

## 3. Elements of Indemnity and Contribution Claims

Finally, the defendants argue that Nissan's pleading of its new causes of action does not satisfy Rule 8 because Nissan has failed to state the elements of a common-law indemnity or contribution claim. The defendants characterize this argument as distinct from their substantive legal arguments for why those two claims should fail as a matter of law, which the court will discuss in more detail hereafter. Purely on the issue of specificity in pleading, however, the defendants' argument again fails. "The Federal Rules of Civil Procedure simply do not require any

magic words or recitations to be made in a complaint . . . . The court's duty is to look to the facts and grant the necessary relief as justice requires—not to demand that certain citations or phrases are used." *Knapp v. City of Columbus*, 93 F. App'x 718, 720 (6th Cir. 2004). While Nissan's description of its new claims in the Amended Complaint is brief, that description is preceded by a significantly more detailed discussion of the underlying facts, agreements, and litigation leading up to this case. The court, accordingly, will not find that the amendment would be futile on Rule 8 grounds.

### **B. Indemnity Claim—Choice of Law and Viability**

The defendants argue next that Nissan's common law implied indemnity claim would fail as a matter of law, under either California law (which the defendants argue should apply) or Tennessee law (which Nissan argues should apply). When a federal court hears a diversity action, the law of the forum state, including choice-of-law rules, applies. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009); *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). The court, accordingly, must follow Tennessee's choice-of-law rules in determining which state's law should govern Nissan's claim.

The defendants argue that, "for questions of choice of law for indemnity and contribution, the law applying to the underlying tort action applies, not the law of a party's chosen forum." (Docket No. 38 at 10.) The only two cases that the defendants cite for that proposition, however, are Sixth Circuit cases applying Michigan choice-of-law principles. *See In re Air Crash Disaster*, 86 F.3d 498, 541–43 (6th Cir. 1996); *Gen. Motors Corp. v. Nat'l Auto Radiator Mfg. Co.*, 694. F2d 1050, 1053 (6th Cir. 1982). Cases considering indemnity rights under Tennessee's choice-of-law rules do not appear to have recognized that proposition, but have, instead, applied ordinary choice-of-law principles with regard to indemnity claims. *See, e.g.*, *Duncan-Williams, Inc. v.*

9

*Capstone Dev., LLC*, 908 F. Supp. 2d 898, 906 (W.D. Tenn. 2012); *Safeco Ins. Co. of Am. v. Criterion Inv. Corp.*, 732 F. Supp. 834, 841 (E.D. Tenn. 1989). The court, accordingly, will consider this claim under Tennessee's ordinary rules for choice-of-law determinations.

In order to determine which state's laws apply to this claim, it is necessary, first, to determine what exactly the claim is. Although the proposed Amended Complaint refers to this theory of recovery only as "common law indemnity," Nissan has clarified in its briefing that what it means to plead is "essentially an indemnity claim based upon an implied contract." (Docket No. 39 at 4.) This clarification is necessary, in part, because, as the defendants have correctly pointed out, Tennessee's adoption of comparative fault for tortfeasors resulted in the elimination of some forms of indemnity between tortfeasors under the common law. *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 434 (Tenn. 1996). However, Tennessee law recognizes that, even if there is no written contract governing a specific transaction, an implied-in-fact contract can "arise under circumstances which, according to the ordinary course of dealing and common understanding . . . show a mutual intention to contract." *Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (quoting *Weatherly v. Am. Agric. Chem. Co.*, 65 S.W.2d 592, 598 (Tenn. Ct. App. 1933))). Viewed in the light of Nissan's clarification, this is simply another contract claim pleaded in the alternative, based on an implied contract governing the sale of the Subject Vehicle's DSS component, to be considered only if the court holds that neither the MPA nor the purchase order Terms and Conditions applies.

Tennessee follows the law of *lex loci contractus* in contract disputes. *See Vantage Tech. v. Cross*, 17 S.W. 3d 637, 650 (Tenn. Ct. App. 1999). Under *lex loci contractus*, "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary

intent." *Vantage Tech.*, 17 S.W. 3d at 637 (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). Nissan argues that this rule would call for Tennessee law to apply to the implied contract between it and the Continental companies. Although the court currently lacks the factual record to reach a definitive conclusion with regard to where any such implied contract would have been formed, the court cannot say, at this point in time, that the argument is futile. Moreover, if Tennessee law applies, then Nissan has pleaded a viable theory of recovery, at least as long as one takes into account Nissan's clarification that it is referring to implied contractual indemnity, and not some other common law theory of recovery.

The defendants identify two grounds based on which, they argue, the court should reject Nissan's implied contract argument. First, the defendants cite the principle that "[a] contract cannot be implied . . . where a valid contract exists on the same subject matter." *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991) (citing *Taillie v. Chedester*, 600 S.W.2d 732 (Tenn. Ct. App. 1980)). But the defendants cannot have it both ways; they cannot base their defense on Nissan's inability to establish a written contract governing the relevant transaction, then deny the possibility that an implied contract existed in its place. The factual question of what agreements existed regarding the Subject Vehicle's DSS component cannot be resolved at this stage, and the plaintiffs are entitled to plead alternative theories of the case, including the theory that there was an implied contract but no directly applicable written one.

Second, the defendants argue that Nissan is barred from seeking indemnity because it was a tortfeasor in the underlying product liability action, and Tennessee does not permit implied indemnity when the plaintiff and defendant were both at fault in the underlying injury. *See Time & Sec. Mgmt., Inc. v. Pittway Corp.*, 422 F. Supp. 2d 907, 916 (W.D. Tenn. 2006). However, the principle that the defendants are citing, insofar as it is an accurate statement of Tennessee law,

applies only in cases where there is no implied contractual indemnity based on conduct, and indemnity is found "impliedly from the parties' relationship" alone. *Med. Protective Co. v. Bolick*, No. 2:15-CV-322, 2016 WL 5172282, at *4 (E.D. Tenn. Sept. 19, 2016) (emphasis added); *see Pittway*, 422 F. Supp. 2d at 916 (basing holding on fact that "there was no contractual relationship between the parties").

As Nissan has clarified, its claim is based on an alleged contractual right, not merely a right inferred from the parties' relationship. Specifically, Nissan argues that the Continental companies and Nissan had engaged in an established course of dealing that incorporated indemnification terms that were mentioned in numerous written contracts, most notably Nissan purchase orders. Nissan argues that those terms, impliedly through the parties' course of dealing, applied to the transaction relevant to this case even if, for some reason, Nissan's Terms and Conditions were not attached to the specific purchase order that was used in this instance. *See Shipley v. Sofco Erectors, Inc.*, No. C.A. 743, 1988 WL 48618, at *6 (Tenn. Ct. App. May 16, 1988) ("[W]e believe the course of dealing of the parties as to the prior two lease agreements, which contained the same indemnity language, demonstrates an intent to lease the crane in question under the same terms . . . ."). Because Nissan's indemnity claim is contractual in nature, it is not categorically barred by the rule cited by the defendants.

The court, accordingly, will allow Nissan to amend its complaint in this regard, although the court will also require Nissan to provide an updated version of the Amended Complaint that reflects the nature of this claim. Specifically, Nissan must revise its Amended Complaint to reflect that its claim rests on an implied contractual duty.

### C. Contribution in a Breach of Contract Case

It is not clear, from Nissan's Reply, whether Nissan still takes the position that its mention of "contribution" in its Amended Complaint has any legal significance. The Reply only discusses contribution as part of a combined "implied-indemnity-or-contribution" claim, which, Nissan has clarified, is, in fact, "essentially" just a claim for indemnity under an implied contract. (Docket No. 39 at 4.) Insofar as contribution is being offered as an independent ground for recovery, however, the defendants appear correct that such an amendment would be futile. "No Tennessee court has allowed . . . a contribution claim . . . where the only underlying cause of action is for breach of contract." *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 947 (W.D. Tenn. 2010). The right of contribution, where it applies, exists between joint tortfeasors based on proportionate liability. *See* Tenn. Code Ann. § 29-11-102(a)–(b) (setting forth general provisions of the Uniform Contribution Among Tort-Feasors Act). However, "[w]here one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution." Tenn. Code Ann. § 29-11-102(f). This case, by Nissan's own characterization, is about contractual indemnity rights. Accordingly, the court will require Nissan, as part of its clarification of the basis of its claims, to delete its claim for contribution.

### CONCLUSION

For the foregoing reasons, Nissan's Motion to Amend Complaint (Docket No. 35) is hereby **GRANTED** in part and **DENIED** in part. Nissan is **ORDERED** to file an Amended Complaint consistent with this Memorandum and Order within seven days. Specifically, the Amended Complaint shall reflect the allegations of the proposed Amended Complaint (Docket No. 35-1) except that (1) it shall include all of the proposed exhibits as appropriately filed attachments, (2) paragraph 48 shall be revised to reflect that Nissan is pleading a claim for indemnity under an

implied contract, and (3) paragraph 48 should not contain a claim for contribution. The initial case management conference previously scheduled for August 26, 2019 is hereby **RESET** for November 4, 2019 at 4:00.

    It is so **ORDERED**.

                                          ALETA A. TRAUGER
                                          United States District Judge