# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

NISSAN NORTH AMERICA, INC., )
)
    Plaintiff, )
)
v. )
)
CONTINENTAL AUTOMOTIVE )
SYSTEMS, INC. (successor to Continental )
Teves, Inc.); CONTITECH NORTH )
AMERICA, INC.; and CONTINENTAL )
TIRE THE AMERICAS, LLC (successor to )
Continental Tire North America, Inc.) )
)
    Defendants. )
)

No. 3:19-cv-0396
JUDGE ALETA A. TRAUGER
MAGISTRATE JUDGE GRIFFIN

**ORAL ARGUMENT
REQUESTED**

# CONTINENTAL AUTOMOTIVE SYSTEMS, INC.'S, CONTINENTAL TIRE THE AMERICAS, LLC'S, AND CONTITECH NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO NISSAN'S MOTION FOR SUMMARY JUDGMENT

# I.    Introduction

Contrary to the intent and purpose of Fed. R. Civ. P. 56, Nissan's Motion is predicated not on undisputed facts but rather on gross factual omissions and outright misstatements of both fact and law because the actual record does not support the relief Nissan seeks. When the complete record of undisputed facts is considered in its proper context, it is Defendants, not Nissan, who are entitled to summary judgment for four simple reasons, supported by indisputable evidence:

- **The parties' Master Purchase Agreement ("MPA") is prospective only.** Contrary to Nissan's claim that it applies "forward and backward," the MPA is a framework document that expressly applies only prospectively, and then only to products purchased from specific contracting parties through individual purchase orders issued and accepted on or after the document's effective date of October 22, 2004. The MPA therefore does not apply to the subject purchase order contract, which Nissan issued to Continental Automotive Systems Inc. ("CAS") in 2003.

- **No California jury or court found Defendants liable.** A California jury found Nissan, and only Nissan, liable and 100% responsible for injuries to the decedents in the underlying case. Neither that jury nor any California court considered or held the Continental Defendants liable because they were not parties to the trial, did not appear at trial, and were not on the verdict sheet, all of which precluded the issue of Defendants' liability from being litigated or addressed by the trier of fact at trial or by the courts on appeal.

- **Defendants ContiTech North America, Inc. ("ContiTech") and Continental Tire the Americas, LLC ("Continental Tire") are not proper parties.** Nissan's decision to name ContiTech and Continental Tire in this lawsuit is wholly improper because neither of those Defendants ever manufactured, supplied, or contracted with Nissan for any braking automotive components Nissan integrated into the Subject Vehicle.

- **The California "good faith" settlement determination bars any implied-indemnity claim.** Nissan stipulated and agreed that "any and all claims by and between [Nissan and CAS] for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, shall be barred pursuant to *California Code of Civil Procedure* § 877.6."

The law is very clear on each of these points: i) documents do not apply retroactively unless such intent is clearly stated in the document; ii) Nissan cannot use the California jury's findings or

the California appellate court's decision as a sword to offload its own liability to Defendants who did not participate at all in the underlying trial; iii) Nissan cannot assert a breach-of-contract claim against non-parties (ContiTech and Continental Tire) to the alleged contract; and iv) Nissan's implied contractual indemnity claim is barred. These are hardly complex or novel legal concepts, but Nissan chose to disregard them and file its lawsuit anyway.

There is simply no legal mechanism that allows Nissan or this Court to bootstrap strict product liability concepts to Defendants in this Tennessee action on these facts. Defendants request that the Court deny Nissan's Motion and instead grant Defendants' Motion for Summary Judgment, which is being filed contemporaneously with this response.

## II.   Factual Background

Nissan's own Memorandum quotes the Supreme Court's explanation that a state court judgment is to be given preclusive effect by a federal court only "if rendered by a court with adjudicatory authority over the ***subject matter and persons governed by the judgment***."[1] (Nissan Mem. at 6 (quoting *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998)). But in practically the same breath, Nissan asks this Court to enforce a California judgment (entered only against Nissan) against Defendants without either the requisite subject matter or parties. Defendants were not parties to the California wrongful-death trial purportedly giving rise to this lawsuit and were not included on the jury's verdict form. (SUF ¶¶ 46-48).[2] ContiTech and Continental Tire were never

---

[1] Emphasis supplied throughout unless otherwise indicated.

[2] All factual references relate to Defendants' Response to Nissan's Statement of Undisputed Facts and Defendants' Statement of Additional Material Facts Precluding Summary Judgment for Nissan ("SUF").

2

even parties to that lawsuit because they had nothing to do with the manufacture or supply of any braking components to Nissan for the Subject Vehicle. (*Id.* ¶¶ 26 & 46). The California jury and courts considered only Nissan's liability and culpability for the deaths of three young people, ultimately concluding that Nissan was 100% responsible for their deaths. (*Id.* ¶¶ 9-10.) Nissan's blanket reliance on the California Court of Appeals Opinion for the "facts underlying this indemnity action" is therefore significantly misplaced. Although the jury verdict and appellate opinion are binding and preclusive as to Nissan's liability, negligence, and 100% responsibility for the deaths of three young Californians, they cannot be afforded Full Faith and Credit as to the Continental Defendants in this action because those Defendants were not participants during the trial and their alleged liability was never adjudicated. As the California appellate court recognized, "language in a judicial opinion is to be understood in accordance with the facts and issues before the court" and "[a]n appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.'" *Cruz v. Mathenge*, No. B286067, 2019 WL 926498, at *21 (Cal. App. Feb. 26, 2019) (quotations omitted).

Accordingly, Defendants dispute Nissan's attempts to convert the appellate court's discrete findings into factual determinations of Defendants' liability. Defendants incorporate instead their Responses to Nissan's purported Statement of Undisputed Facts as well as Defendants' own Statement of Additional Undisputed Facts, summarized below.

### A. ContiTech and Continental Tire are not proper defendants

Nissan never issued any purchase order to ContiTech or Continental Tire for the Assemblies, and neither of those entities ever manufactured any of Assemblies—and certainly not the Assembly integrated into the Subject Vehicle—for Nissan. (SUF ¶ 26.) Because neither

3

ContiTech nor Continental Tire manufactured the Assembly at issue or sold it to Nissan, their presence as defendants in this case is inexplicable and inappropriate, and they should be dismissed.

### B. The purchase-order contract for the sale of the Assembly at issue predates the MPA by well over a year and contains no indemnity provision

Nissan purchased the Assembly it incorporated into the Subject Vehicle from CAS—and only CAS—pursuant to a purchase order ("Contract") Nissan issued well over a year before the parties executed the MPA. (*Id.* ¶ 22). The purchase-order Contract did not incorporate or refer to any contract terms other than the basic information provided on the face of the purchase: part, price, and quantity. There are no warranties, no remedy provisions, and no indemnity obligations anywhere in the purchase order, and the scope of the contract was expressly limited "to the terms and conditions stated herein." (*Id.*) The Assembly at issue was purchased and integrated into the Subject Vehicle before it was built and shipped by Nissan on July 26, 2004, which was at least three months before the parties executed the MPA. (*Id.* ¶ 25).

### C. The later-executed MPA expressly applies only to future transactions

On October 22, 2004—over a year *after* Nissan sent the purchase-order Contract to CAS and three months *after* Nissan manufactured the Subject Vehicle incorporating the Assembly at issue—Nissan and Defendants executed the MPA on which Nissan's claim for indemnity is premised. (*Id.* ¶¶ 21 & 25). Nissan fully acknowledges that CAS "supplied the braking system at issue prior to the execution of the MPA." (Nissan Memo. at 7). By the MPA's plain terms, Nissan has no obligations to purchase anything from any of the Defendants unless and until it issues a "Purchase Order," which the MPA expressly and carefully defines as only those purchase orders

first issued by Nissan and then accepted by one of the Defendants on or after the MPA's Effective Date of October 22, 2004:

> "Purchase Order"     any purchase order or amendment to a purchase order submitted by Nissan **and accepted by Supplier** on or after the Effective Date. **For purposes of this definition, Supplier will be deemed to have accepted the purchase order if (i) it fails to object to it in writing within ten (10) business days after receipt, or (ii) Supplier acknowledges in writing its acceptance of the Purchase Order or amendment thereto;**

(SUF ¶¶ 27-29). The MPA therefore does not apply to purchase orders issued and accepted before its Effective Date of October 22, 2004. Nissan even acknowledges in its own moving papers that "The MPA has continuously governed the relationship between Nissan and Continental *from the date it was executed to the present.*" (Nissan Memo. at 7).

The MPA includes a limited indemnification provision in Article 12, but it does not indicate that the provision applies retroactively. And it expressly excludes indemnification for costs "resulting from allegations of conduct or defect reasonably attributable to Nissan or others":

> In each case above, Supplier shall not be required to indemnify Nissan for those damages and expenses resulting from allegations of conduct or defect reasonably attributable to Nissan or others. Supplier shall not be required to compensate all or any part of expenses for settlement unless Supplier has been informed in advance that settlement discussions will take place, and, to the greatest extent possible in good faith, has been afforded the opportunity to discuss and consult on the terms of such settlement in advance.

(SUF ¶ 30). On this point, the California jury's determinations regarding Nissan's design choices and failure to recall the Subject Vehicle are binding on this Court and bar Nissan's indemnity claim even if Nissan can convince the Court to retroactively apply the strictly prospective-looking MPA.

5

### D. Nissan and CAS are named as defendants in a wrongful-death lawsuit

On August 29, 2012, Solomon Mathenge was driving the Subject Vehicle in Los Angeles, California, when he swerved into the oncoming traffic lanes and entered the intersection against a red light striking another vehicle driven by Saida Juana Mendez-Bernardino (age 27) with her two young daughters also in the Subject Vehicle. *Cruz*, 2019 WL 926498, at *3. Ms. Mendez-Bernardino and her daughters each suffered fatal injuries. *Id*. The decedents' surviving kin filed two wrongful-death lawsuits in California against Mathenge. *Id*. at *4. Another products liability action was filed against Nissan and CAS, both of which were ultimately named defendants in all three lawsuits, which were consolidated into one proceeding ("the Bernardino Lawsuit"). *Id*. Neither ContiTech nor Continental Tire were ever parties to the Bernardino Lawsuit. (SUF ¶ 46).

### E. The California jury finds Nissan negligent and 100% responsible for the wrongful deaths of the Bernardino Lawsuit decedents

Before trial, CAS settled with each of the plaintiffs and claimants in the Bernardino Lawsuit. In that settlement, CAS specifically disavowed any liability for the underlying accident. Pursuant to California law, Nissan reviewed CAS's settlement with the Bernardino Lawsuit plaintiffs, and Nissan stipulated that CAS's settlement was made in good faith. (*Id*. ¶ 44). As part of that stipulation, Nissan agreed that "any and all claims by and between the Parties for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, shall be barred pursuant to *California Code of Civil Procedure* § 877.6." (*Id*. ¶ 45).

The remaining claims in the Bernardino Lawsuit went to trial in June 2017. During the trial, the Bernardino Lawsuit plaintiffs successfully argued that Nissan placed vehicles into the field with

an optimized hydraulic braking ("OHB") strategy that Nissan knew had an "unexpected" and "alarming" feel for its end users. This was a deliberate design decision by Nissan to "give the driver some tactical feedback, hearing, seeing, feeling that the brake system needs attention. So please go get the vehicle serviced. That was a conscious decision made." (*Id.* ¶ 34 & 49.) And when users returned vehicle after vehicle because of surprising and unsettling real-world encounters with Nissan's OHB strategy and related brake feel and pedal travel design choices in the field, Nissan chose not to act because, according to Nissan, the OHB system operated as Nissan intended. (*Id.* ¶¶ 31-43). Nissan alone designed, developed, tuned, and validated the feel, response, and travel of the brake pedal when the Subject Vehicle's OHB system was activated. (*Id.* ¶ 31). And Nissan alone was responsible for its decision not to recall the Subject Vehicle. (*Id.* ¶ 37-40).

The jury ultimately awarded the Bernardino Lawsuit plaintiffs, finding that Nissan's design of its integrated braking system and Nissan's negligence in failing to recall the Subject Vehicle were both substantial factors in causing harm to the decedents. (*Id.* ¶¶ 9-10 & 53-54). The jury ultimately awarded the Bernardino Lawsuit plaintiffs a cumulative judgment of $24,931,109, finding Nissan to be 100% responsible for the judgment.

> **A.**      **Liability Claims for Hilario Cruz, Araceli Mendez and Solomon Mathenge**
>
> 1.      Was the design of the 2004 Infiniti QX56's braking system a substantial factor in causing harm to Hilario Cruz, Araceli Mendez and Solomon Mathenge?
>
>        __X__ Yes       _____ No

3.    Was Nissan negligent in failing to recall the 2004 Infiniti QX56?

    __X__ Yes          _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no to question 3, then skip question 4 and answer question 5.

4.    Was Nissan's negligence in failing to recall the 2004 Infiniti QX56 a substantial factor in causing harm to Hilario Cruz, Araceli Mendez and Solomon Mathenge?

    __X__ Yes          _____ No

---

**F.    Comparative Responsibility**

13.    100% represents the total responsibility for Hilario Cruz's and Araceli Mendez's harm. What percentage of responsibility of harm do you assign to Nissan?

| | | |
|---|---|---|
| Nissan: | 100 | % |
| Solomon Mathenge: | _____ | % |
| TOTAL: | 100 | % |

---

(*Id.* ¶¶ 10 & 48). Nissan filed several post-trial motions including one to reduce the judgment amount to account for CAS's settlement with the underlying plaintiffs. The Court granted the motion and entered an amended judgment totaling $21,631,109. (*Id.* ¶ 14.)

### F.  The California Court of Appeals affirms the jury's verdict

Nissan appealed the Bernardino Lawsuit verdict. On February 26, 2019, the California Court of Appeals affirmed the trial court's and jury's findings. Specifically, the appellate court concluded there "was substantial evidence to support the jury's finding that switching into OHB mode caused the accident in this case." *Cruz* 2019 WL 926498, at *13.

8

### G. Nissan seeks indemnification for its own conduct and negligence

On April 5, 2019, Nissan sued Defendants in the Tennessee Circuit Court for Rutherford County. Defendants removed the matter to this Court based on diversity jurisdiction. In its Amended Complaint, Nissan alleges that it is entitled to indemnification from Defendants under the MPA for "all liability and costs associated with the Lawsuit." (Dkt. 43, Am. Compl. ¶¶ 46-47). As stated in its moving papers, Nissan seeks reimbursement for the full amount of the jury's verdict and its alleged defense costs, which Nissan claims to be a staggering amount in excess of $6 million.[3] Likely because the MPA was executed well *after* the sale of the Assembly at issue, Nissan alternatively claims that Defendants have "an implied contractual duty to indemnify and hold Nissan harmless from all liability and costs associated with the Lawsuit under the implied contract that existed among the parties." (*Id.* ¶ 48.) But Nissan already stipulated and agreed that CAS's good-faith settlement of the Bernardino Lawsuit bars this claim. And in the absence of an express contract for indemnity and in the face of the California jury finding Nissan negligent and 100% responsible for the injuries in the Bernardino Lawsuit, Nissan's claims necessarily fail as a matter of law.

## III.    Legal Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Put another

---

[3] Defendants dispute that these purported defense costs are reasonable. Defendants have requested discovery on this issue, but Nissan has not provided detailed and auditable information supporting these alleged costs. Nissan's conclusory declarations of counsel submitted in support of the motion fail to do so. Because the issues of whether and when these costs were incurred and the reasonableness of them is contested, summary judgment is not appropriate.

way, the standard for determining whether summary judgment should be granted is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Turner-Meadows v. Gen. Motors, LLC*, 786 Fed. Appx. 592, 595-596 (6th Cir. 2019) (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)). In considering a motion for summary judgment, the Court must construe all evidence and all reasonable inferences in favor of the non-moving party. *Id.* at 595. If there is evidence on which a jury could reasonably find for the non-movant, then summary judgment cannot be granted. *Id.* (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012)).

## IV.     Argument

Nissan's Motion is predicated on two fictions. First, Nissan asks the Court to rule that the MPA, which expressly applies only to purchase orders issued by Nissan and accepted by Defendants on or after October 22, 2004, retroactively applies to the purchase-order Contract Nissan issued to CAS in 2003. Second, Nissan asks the Court to misapply the "Full Faith and Credit" doctrine beyond its limited purpose by enforcing the Bernardino Lawsuit judgment against Defendants, despite the fact that CAS was not a participant at the trial or even included on the verdict sheet, and ContiTech and Continental Tire were never even parties at all in the Bernardino Lawsuit. As evidenced by the utter lack of legal support in Nissan's memorandum, there are simply no facts or law supporting Nissan's positions.

### A. There is no indemnity provision between Nissan and Defendants for the Subject Vehicle or the Assemblies

### i. There is no applicable contract at all between Nissan and either ContiTech or Continental Tire relating to the Assemblies

There is a contract principle that is "so fundamental that it rarely receives mention in case law or commentary . . . that only parties to contracts are liable for their breach." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, No. 16-12022, 2018 WL 4931990, at *5 (E.D. Mich. Oct. 11, 2018) (quoting *FCM Grp., Inc. v. Miller*, 17 A.3d 40, 54 (Conn. 2011)). As a corollary to this basic principle, a party cannot assert a breach-of-contract claim against another who is not a party to the alleged contract. *Curlee v. State Auto Mut. Ins. Co.*, 2003 WL 22098037, at *2 (Tenn. Ct. App. Sept. 11, 2003) (dismissing plaintiff's claim against State Farm because "Curlee and State Farm had no contractual relationship on which a breach of contract claim could be used").

Nissan has disregarded these basic contract principles by naming Continental Tire and ContiTech as defendants, simply because they also signed the later-executed MPA. Throughout its moving papers, Nissan improperly refers to all Defendants as "Continental," but the MPA is strictly a framework agreement that supplies supplemental contract terms if and when Nissan issues a purchase order to a particular Continental Defendant for a particular part. (SUF ¶ 27). The MPA is explicit that "Nissan shall have no obligation to purchase any Parts before such Purchase Orders and/or Releases are issued" and accepted by one of the Continental Defendants on or after October 22, 2004. (*Id.* ¶¶ 27-29). Here, Nissan never issued a purchase order to or otherwise contracted with either Continental Tire or ContiTech for the purchase and sale of the Assemblies. (*Id.* ¶ 26.) Neither of these entities manufactured, sold, supplied, or otherwise had any role whatsoever in providing the Assemblies to Nissan. (*Id.* ¶¶ 26 & 46). Instead, Nissan purchased the

Assembly at issue through a purchase-order Contract issued solely to CAS's predecessor, Continental Teves, Inc. (*Id.* ¶¶ 22-25). The lack of a contract for the Assemblies at issue is fatal to Nissan's contractual indemnity claims against ContiTech and Continental Tire.

### ii. There is no express indemnity obligation between CAS and Nissan

For Nissan to maintain its contract-based indemnity claim against the only Defendant it contracted with for the Assemblies—CAS—the indemnity obligation must be described clearly and unambiguously. Express indemnity provisions are construed strictly against the drafter and against the indemnitee. *Fireman's Fund American Ins. Cos. v. Gen. Elec. Co.*, 253 N.W.2d 748, 750 (Mich. App. 1977); *Reed v. St. Clair Rubber Co.*, 324 N.W.2d 512, 515 (Mich. App. 1982).[4] For an

---

[4] Because the purchase-order Contract has no choice-of-law provision, it is subject to a choice-of-law analysis. In diversity actions, federal courts apply the choice-of-law rules of the forum state. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Tennessee "deviates from the traditional *lex loci* rule" in contracts for the sale of goods subject to the Uniform Commercial Code. *Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co.*, 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011). In sales contracts subject to the UCC, and where the parties do not specify a choice of law, the Tennessee UCC will apply to transactions bearing an "appropriate relation" to Tennessee. T.C.A. 47–1–301(b). The comments to this statute explain that where "a transaction has significant contacts with a state which has enacted the Act and also with other jurisdictions, the question what relation is 'appropriate' is left to judicial discretion." *Id.* cmt. 3. In exercising this discretion, the Court may consider factors including "(1) where the good in question was produced, (2) where delivery took place, (3) where the majority of negotiations took place, and (4) where the defendant's principal place of business is located." *McMahan Jets, LLC v. Roadlink Transp., Inc.*, 68 F. Supp. 3d 817, 823 (W.D. Tenn. 2014) (*citing Carbon Processing & Reclamation,* LLC, 823 F. Supp. 2d at 801) (relying on such factors). Nissan sent the Contract to CAS in Michigan. CAS accepted the Contract in Michigan, and CAS maintains its principal place of business in Michigan. CAS did not even ship the Assemblies to Tennessee—they were shipped to North Carolina. On these facts, Michigan law should govern this matter. Practically speaking, however, whether Michigan or Tennessee law applies, Defendants are entitled to summary judgment because neither jurisdiction will impose an implied indemnity obligation when the party seeking indemnity is at fault (as discussed below).

indemnity contract to be given effect, its terms must be unequivocal. *Pritts v. J. I. Case Co.*, 310 N.W.2d 261 (Mich. App. 1981) (citations omitted); *Med. Protective Co. v. Bolick*, 2016 WL 5172282, at *4 (E.D. Tenn. Sept. 19, 2016) (noting there must be a "clear and unequivocal expression of an intention to indemnify"); *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 102 (Mich. 2014) ("Where parties have expressly contracted for indemnity, the extent of the duty must be determined from the language in the contract") (internal citations omitted).

In this case, there is no indemnity language at all in the purchase-order Contract between Nissan and CAS for the Assembly at issue. (SUF ¶ 22). There are no terms other than those on the face of the purchase order because the Contract "expressly limits acceptance to the terms and conditions stated herein." (*Id.*) Nor is there an implicit indemnity obligation simply by virtue of a buyer-seller relationship. *See, e.g.*, *First Nat'l Bank of Chicago v. Cumberland Bend Inv., L.P.*, No. M2000-00001, 2002 WL 31835693, at *3 (Tenn. App. Dec. 19, 2002). In the absence of an indemnification provision, Nissan's claims necessarily fail. *Reed*, 324 N.W.2d at 515 (affirming trial court's finding that there was no express contract of indemnity when the contract clauses at issue "totally fail to set forth contractual indemnity provisions").

It is Nissan's burden to establish the terms of the contract governing the CAS Assembly at issue that was incorporated into the Subject Vehicle, but it cannot do so. Instead, Nissan attempts to resuscitate its express indemnity claim by relying on the later-executed MPA, which is wholly untethered from the Contract at issue. For Nissan to prevail, this Court would have to ignore the

13

plain terms of the Contract and impute retroactive contractual intent that strictly favors Nissan, the indemnitee. What Nissan asks is directly at odds with basic principles of contract interpretation.

### iii.    The MPA only applies prospectively

A contract is presumably effective on the effective date in the contract itself. *See, e.g.*, *Sta-Rite Indus., LLC v. Franklin Elec. Co.*, 519 Fed. Appx. 370, 379 (6th Cir. 2013). This is particularly true of indemnity contracts, which "cannot be construed to operate retrospectively unless ... the parties expressly provide so in their agreement." *DaimlerChrysler Corp. v. Wesco Distribution, Inc.*, 760 N.W.2d 828, 833 (Mich. App. 2008) (internal citation and quotation marks omitted).[5] The MPA on which Nissan's claims are predominantly based does not expressly provide for retroactive application. (SUF ¶¶ 27-29). Rather, the MPA is explicitly *prospective* in scope. (*Id.*).

Nissan and Defendants executed the MPA over a year after Nissan issued the purchase-order Contract to CAS and at least three months after Nissan manufactured the Subject Vehicle. (*Id.* ¶¶ 21-22). By its plain terms, the MPA only applies to purchase orders issued by Nissan and accepted by one of the Defendants on or after the MPA's Effective Date of October 22, 2004. (*Id.*

---

[5] Unlike the purchase-order Contract at issue, the MPA does specify that it is governed by Tennessee law. Although there does not appear to be Tennessee case law stating this same proposition, the common-sense conclusion that contracts apply prospectively unless expressly provided for in the agreement has been broadly embraced by the courts. *See, e.g.*, *Chicago & N.W. Transp. Co. v. Emmet Fertilizer & Grain Co.*, 852 F.2d 358, 360 (8th Cir. 1988) ("[i]f the parties had intended [the] indemnity obligation to extend to past accidents, they could easily have designed the language ... to say exactly that."); *Servco Pac. Inc. v. Dods*, 193 F. Supp. 2d 1183, 1193 (D. Haw. 2002) (holding that retroactive indemnity provision must be stated "clearly and unequivocally"); *Quality King Distribs., Inc. v. E & M ESR, Inc.*, 36 A.D.3d 780, 827 N.Y.S.2d 700, 703 (2007) (finding that an indemnity clause has no retroactive effect "unless by its express words or necessary implication it clearly appears to be the parties' intention to include past obligations" (internal quotation marks omitted)); *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 916–17 (Iowa 1975) (noting that such clauses must "plainly manifest[ ] an intention, not to be limited to future losses or liabilities, but also to cover past transactions and existing losses or liabilities" (quoting 42 C.J.S. Indemnity § 12(b), p. 581)).

¶¶ 27-29). The parties specifically negotiated the terms of the MPA but, notably, the parties chose not to make the MPA apply retroactively. (*Id.*).

Nissan asks the Court to ignore these plain terms and instead interpret the MPA's integration clause in such an unprecedented manner as to have its provisions apply "forward and backward." Nissan's position is contrary to the purpose of integration clauses, which operate only to bar the introduction of parol evidence by a party to later claim that the contract does not represent the parties' true and complete understanding of the agreement. *See, e.g.*, *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999). Not surprising, Nissan cites no authority for its position because no such authority exists. The simple fact is that the MPA expressly limits the application of its framework terms to Purchase Orders issued and accepted after October 22, 2004. (SUF ¶¶ 27-29). The Contract at issue predates the Effective Date of the MPA by well over a year so it is not a Purchase Order subject to the MPA. (*Id.* ¶ 22). If the parties intended the MPA to apply retroactively, they could have simply changed the language to say exactly that. They chose not to and, as a result, the MPA cannot be applied retroactively.

Although addressing an alternative-dispute resolution provision rather than an indemnity clause, the Sixth Circuit's opinion in *Security Watch, Inc. v. Sentinel Systems, Inc.* is dispositive on this issue. In that case, the Sixth Circuit was analyzing the Western District of Tennessee's decision to grant the defendants' motion to dismiss. The district court granted the motion to dismiss in part because of an ADR clause in a later executed contract ("1994 contract"). On appeal, the plaintiffs argued that the 1994 contract was not applicable to claims related to products supplied under earlier contracts, and, therefore, the ADR provision was not applicable either. In the 1994 contract, there was both an ADR provision and a standard integration clause. The Sixth Circuit held that disputes

15

arising under the pre-1994 contracts were not governed by the ADR clause contained in the 1994 contract because: (1) it was clear that the ADR clause didn't reach disputes relating to products shipped under earlier contracts; and (2) it was inappropriate to read the merger clause as superseding prior annual contracts. It stated:

> Merger clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.

*Id.* at 372. The Sixth Circuit found that the district court ignored the "universally understood purpose of the boilerplate clause" by finding that the 1994 contract constituted the entire relationship of the parties and that any contract prior was a prior written understanding that was superseded by the 1994 contract. *See also Choice Security Sys., Inc. v. AT&T Corp.*, No. 97-1774, 1998 WL 153254, at *1 (1st Cir. Feb. 25, 1998) (finding that an identical "run of the mill integration clause" in a later agreement did not cause it to supersede prior agreements especially when there were no other provisions in the contract at issue that "remotely intimated that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements").

## B. The Bernardino Lawsuit jury and the California Court of Appeal made no findings regarding Defendants' liability or fault

Because there is no enforceable contract of indemnity between Nissan and any of the Defendants regarding the Assembly incorporated into the Subject Vehicle, Nissan's claims for contractual indemnity fail, and there is no need for the Court to indulge Nissan's radical argument that a California jury's findings (and subsequent appellate court's affirmation) that Nissan was

16

negligent, liable, and 100% responsible for the injuries to the decedents in the Bernardino Lawsuit can somehow bind a nonparty (and non-participant) on the issue of liability. Should the Court determine that resolution of this argument is necessary to rendering its decision, the law is abundantly clear: Nissan's attempts to impute liability to non-participant Defendants based on a jury verdict and appellate court ruling is wholly improper for two fundamental reasons. First, neither the jury nor the appellate court made any findings regarding Defendants' liability. Second, the law of issue preclusion cannot be used to convert an appellate court's discussion on the nature of a plaintiff's claims into liability against non-parties. The reality is that the jury, the Superior Court, and the appellate Court never heard, considered, or decided anything regarding CAS's purported liability.

### i. The Court of Appeal's joint-and-several liability discussion was focused only on preventing a double recovery by the plaintiffs

The California appellate court never ruled on CAS's liability. Rather, it considered the sole issue of whether the amount of CAS's settlement with the underlying plaintiffs should be credited against the judgment entered against Nissan pursuant to California Code of Civil Procedure section 877, which directs that a settlement by one "*claimed* to be liable for the same tort" shall reduce the claim against other tortfeasors by the amount of the settlement. (SUF ¶¶ 54-55). Its obvious purpose is to prevent a claimant from recovering twice for the same *injury* for which the settling party *would be* jointly and severally liable *if the case were tried against them and they were found liable.* Under California's Proposition 51, most tortfeasors are jointly and severally liable for economic damages but only *severally* liable, in proportion to their fault, for noneconomic damages. Cal. Civil Code sec. 1431.2. The rule is different in strict products-liability cases where tortfeasors are jointly

and severally liable for *both* economic and noneconomic damages. Thus, in products-liability cases, a settlement by one "*claimed* to be liable for the same tort" is offset against both economic and noneconomic damages as may ultimately be awarded. *Bostick v. Flex Equipment Co., Inc.*, 147 Cal.App.4th 80, 89-92 (2007) (citing *Wimberly v. Derby Cycle Corp.*, 56 Cal.App.4th 618 (1997)). That is all the trial court did in *Cruz*. And that is all the appellate court considered when the plaintiffs appealed the decision to apply the CAS settlement credit. Neither of the courts found that CAS was liable. (SUF ¶¶ 54-55). The *Cruz* court simply held, on the limited issue before it, that the *claim* against CAS that it settled sounded in products liability.

Because a settling party's liability is not litigated or adjudicated, California law specifically holds that indemnity claims between settling and non-settling defendants are reserved for separate determination **on the merits**. *See Bostick v. Flex Equipment Co., Inc.*, 147 Cal. App.4th 80, 96-100, (2007) (holding that a 100% attribution of fault by the jury against a non-settling defendant on claims of strict product liability was not binding in a severed action for indemnity between the non-settling defendant and a settled defendant). The California Court of Appeal explicitly acknowledged this concept in the *Cruz* matter:

> Accordingly, we hold Proposition 51 has no application in a strict product liability case where, as here, the plaintiff's injuries are caused solely by a defective product. A strictly liable defendant cannot reduce or eliminate its responsibility to the plaintiff for all injuries caused by a defective product by shifting blame to other parties in the product's chain of distribution who are ostensibly more at "fault," and therefore may be negligent as well as strictly liable. **The defendant's recourse, if not precluded by good faith settlement principles, lies in an indemnity action**.

*Cruz*, 2019 WL 926498, at \*19 (quoting *Wimberly v. Derby Cycle Corp.*, 56 Cal. App.4th 618, 633 (1997) (internal citations omitted); *accord Springmeyer v. Ford Motor Co.*, 60 Cal. App.4th 1541, 1575-1576 (1998)).

18

ii. **Because CAS did not participate in the trial and CAS's potential liability was never adjudicated, Nissan's Full Faith and Credit argument fails as a matter of law**

Tennessee courts apply the law of the state in which the underlying judgment was rendered to determine the judgment's preclusive effect. *Mitrano v. Houser*, 240 S.W.3d 854, 861 (Tenn. App. 2007). Nissan argues that the California jury's judgment and all related findings against Nissan can simply be transferred to CAS in the present litigation. This is a baseless suggestion. The notions of Full Faith and Credit and issue/claim preclusion cannot possibly apply to CAS, which was not even a party to the prior proceeding when the findings against Nissan were made. (SUF ¶¶ 46-48). California's law on issue preclusion bars Nissan from attempting to use the California Court of Appeal opinion as a sword against CAS in the current proceeding because it requires:

(1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding";

(2) the issue to be precluded "must have been actually litigated in the former proceeding";

(3) the issue to be precluded "must have been necessarily decided in the former proceeding";

(4) "the decision in the former proceeding must be final and on the merits";

(5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and

(6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."

*Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131-1132 (9th Cir. 2019) (citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990)). Absence of any one of these mandatory prerequisites is fatal to

issue preclusion. *Id.* (noting all six criteria must be satisfied). Here, requirements (1), (2), (3), (5), and (6) are all missing.

CAS's supposed fault has *never* been litigated, *never* been presented to a factfinder, and *never* determined. (SUF ¶¶ 46-48 & 54-55). Perhaps most telling, though, CAS was not a party or in privity with a party in the underlying trial.[6] Nor was it a party to the appeal.[7] Under California's requirements for issue preclusion and as a matter of simple due process, it would be improper to bind CAS with any factual finding made in a trial to which CAS was not a party. Under California law, "[i]t is axiomatic that cases are not authority for propositions that are not considered." *California Building Industry Assn. v. State Water Resources Control Board*, 4 Cal.5th 1032, 1043 (2018). Rather, "'[t]he holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning.'" *People v. Jennings*, 50 Cal.4th 616, 684 (2010) (quoting *McGee v. Superior Cour*t, 176 Cal.App.3d 221, 226 (1985)). The California Court of Appeal did not consider CAS's liability because it was not litigated in the underlying trial and therefore could not have possibly been raised on appeal. (SUF ¶¶ 46-48 & 54-55).

---

[6] To the extent Nissan attempts to argue that CAS and Nissan are in privity under a theory of joint and several liability, the California Supreme Court has specifically held that joint and several liability does not put co-obligors in privity with each other with regard to questions of preclusion. *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 819-820 (2015).

[7] *See* https://bit.ly/2Mdnbpg (parties and counsel in the California appeal).

### iii. CAS's "Good Faith" settlement is not a finding of liability and bars Nissan's implied-indemnity claims

California is a comparative fault state regarding the apportionment of damages among defendants in an action. To protect a settling party from subsequent claims of implied indemnity by non-settling defendants who have had to pay more than their share of a judgment, California Code of Civil Procedure Section 877.6 bars such claims when a court finds the settlement to be in "good faith." *See* California Code of Civil Procedure § 877.6(c). The only finding made by the court as part of this process is whether the settlement meets the criteria for good faith. Nothing about Code of Civil Procedure 877.6 or interpretive case law stand for the proposition that a finding of good faith of a settlement precludes the settling defendant from disputing its liability and fault in a subsequent express indemnity action by the non-settling party. *See Wimberly v. Derby Cycle Corp.*, 56 Cal.App.4th 618, 633 (1997) (internal citations omitted). The California Supreme Court emphasized in *Hamilton v. Maryland Cas. Co.*, 27 Cal.4th 718, 729 (2002), that a good faith settlement determination is *not* a substitute for a liability determination as to the settling defendant: "The [settlement] court's primary concern is whether, *assuming liability*, the settling tortfeasor is paying *less* than its proportionate share of the plaintiff's loss, and the evidence submitted by the parties is relevant to that question." (quotation omitted, first emphasis supplied) For that reason, "the evidentiary showing made at the ... section 877.6 proceedings cannot be a substitute for an actual trial." *Id.*

Here, Nissan stipulated that CAS's settlement met the criteria for "good faith" and that Nissan was barred from pursuing any claim of implied or equitable indemnity against CAS. (SUF ¶¶ 44-45). The "good faith" determination cannot be a substitute for a trial as to CAS's actual liability. Indeed, if CAS had *no* liability, then its settlement met the "good faith" standard because

it was not paying less than its zero percent fault share. Nissan specifically avoided any effort to have a jury weigh Nissan's fault in comparison to the alleged fault of CAS, and the finding of good faith did not preclude Nissan from making such a request. (*Id.* ¶¶ 52-53).[8]

### C. California law (and its own negligence) bars Nissan's implied indemnity claim

Nissan's purported alternative claim for implied contractual indemnity is a mystery considering Nissan stipulated to the good faith of CAS's settlement in the Bernardino Lawsuit and, as part of that stipulation, Nissan agreed that "any and all claims by and between the Parties for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, shall be barred pursuant to *California Code of Civil Procedure* § 877.6." (*Id.* ¶¶ 44-45). And that is the legal effect of a "good faith" settlement determination (as entered here) under controlling California law, California Code of Civil Procedure section 877.6(c). *See also Bay Development, Ltd. v. Superior Court*, 50 Cal.3d 1012, 1029-1031 (Cal. 1990) (noting that Rule 877.6(c) bars claims for indemnity based on an implied contractual theory).

In this case, Nissan's purported claim for implied indemnity is barred not only by California law but also its own conduct and negligence because Nissan can only maintain a claim for implied indemnity if its liability arises vicariously or by operation of law from the conduct of Defendants and through no fault of Nissan. *Peeples v Detroit*, 297 NW2d 839 (Mich. App. 1980); *Duncan-Williams, Inc. v. Capstone Develop., LLC*, 908 F. Supp. 2d 898, 906 (W.D. Tenn. 2012) ("Under both Alabama and Tennessee law, indemnity is available only in a case where 'one party is held liable solely by imputation of law because of a relation to a wrongdoer.'") (quotation omitted).

---

[8] *See Roslan v. Permea, Inc.*, 17 Cal.App.4th 110, 112-113 (1993) (holding that it is reversible error to prohibit a non-settling defendant from including a settled defendant on the verdict form).

Stated differently, Nissan must prove that it "is entirely without fault and that it would be held liable only because of its vicarious relationship with [CAS]." *McPike v. Die Casters Equip. Corp.*, 504 F. Supp. 1056, 1065 (W.D. Mich. 1980); *Time & Sec. Mgmt, Inc v. Pittway Corp.*, 422 F. Supp.2d 907, 916-17 (W.D. Tenn. 2006) (dismissing implied indemnity claim where the party asserting it was defending against claims for its own wrongdoing); *Med. Protective Co. v. Bolick*, No. 15-CV-322, 2016 WL 5172282, at *4 (E.D. Tenn. Sept. 19, 2016). Nissan cannot meet this burden because the California judgment finding Nissan negligent and 100% responsible for the subject accident that resulted in the deaths of the Bernardino Lawsuit decedents is afforded Full Faith and Credit in this matter.

In the Bernardino Lawsuit, the jury found that "the design of the 2004 Infiniti QX56's braking system [was] a substantial factor in causing harm to Hilario Cruz, Araceli Mendez and Solomon Menthenge[.]" (SUF ¶¶ 9, 31-43, & 49-53). The jury also found that "Nissan's negligence in failing to recall the 2004 Infiniti QX56 [was] a substantial factor in causing harm to Hilario Cruz, Araceli Mendez and Solomon Menthenge[.]" (*Id.*). Unlike Nissan's attempt to bind CAS with those findings, those findings and resulting Judgment are binding on Nissan.

Nissan placed vehicles into the field with an OHB system that Nissan knew had an "unexpected" and "alarming" feel for its end users to "give the driver some tactical feedback, hearing, seeing, feeling that the brake system needs attention. So please go get the vehicle serviced. That was a conscious decision made." (*Id.* ¶¶ 34 & 49). And when users returned vehicle after vehicle because of surprising and unsettling real-world encounters with Nissan's OHB strategy and related brake feel and pedal travel design choices in the field, Nissan chose not to act because, according to Nissan, the OHB system operated as Nissan intended. (*Id.* ¶¶ 37-43). For

23

these reasons, the jury in the Bernardino Lawsuit found that Nissan's own system and vehicle design and development strategy and own negligent failure to recall vehicles deploying that strategy were substantial factors in causing the injuries to the decedents. (*Id.* ¶¶ 9, 31-43, & 49-53). Because of these findings, Nissan cannot sustain a claim for implied indemnity. Moreover, the MPA does not provide in "clear and unequivocal terms" an intent to require CAS to indemnify Nissan for Nissan's own culpable conduct. *HMC Techs Corp. v. Siebe, Inc.-Robertshaw Tenn. Div.*, No. E2000-01093, 2000 WL 1738860, at *3 (Tenn. App. Nov. 27, 2000). In fact, the MPA explicitly carves out indemnification for costs reasonably attributable to Nissan's conduct. (SUF ¶ 30). There is no dispute that Nissan designed, developed, tuned, and validated the feel, response, and travel of the brake pedal when the Subject Vehicle's OHB system was activated. (*Id.* ¶ 31). And there is no dispute that Nissan alone was responsible for the decision whether to recall the Subject Vehicle. (*Id.* ¶¶ 37-43). Far from merely "reasonably attributable" to Nissan's conduct, the Bernardino jury found that Nissan's conduct was the sole factor in causing the underlying accident.

Nissan designed a braking strategy to "give the driver some tactical feedback." (*Id.* ¶ 34). When that decision led to thousands of complaints, Nissan was defiant, refusing to recall its vehicles because the OHB activation strategy worked as Nissan intended. (*Id.* ¶¶ 37-43). Those are the reasons the Bernardino Litigation plaintiffs sued Nissan and that is how the case was tried. Stated simply, Nissan's own designs, strategies, conduct, and omissions resulted in its damages. Nissan's claims are therefore barred not just by California law but also by the fact that Nissan alone was at fault and 100% responsible for the deaths of the Bernardino Lawsuit decedents. Defendants are entitled to summary Judgment of Nissan's implied indemnity claims.

## V. Conclusion

This is a case that never should have been filed against Defendants. Nissan's attempts to foist the consequences of its own misconduct on the Defendants are contrary to the law of indemnity. Nissan issued no purchase order to ContiTech or Continental Tire for the Assemblies (because they never manufactured them). And the purchase order Nissan issued to CAS for the Assemblies had no indemnity obligations at all, much less indemnity obligations for Nissan's own design choices and negligence. These Defendants are plainly entitled to judgment as a matter of law. Defendants therefore request that this Court deny Nissan's Motion, grant Defendants' Cross Motion, dismiss Plaintiff's Complaint with prejudice, enter judgment in favor of Defendants and against Plaintiff, with costs and fees to be awarded as allowed by law.

Respectfully submitted,

Dated: June 3, 2020

/s/ *W. Scott Sims*
W. Scott Sims
SIMS FUNK, PLC
3322 West End Ave. #200
Nashville, TN 37203
(615) 454-9335
ssims@simsfunk.com

and

Herbert C. Donovan (*admitted pro hac vice*)
Andrew B. Fromm (*admitted pro hac vice*)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Ave. Suite 400
Birmingham, MI 48009
(248) 971-1800
donovan@bwst-law.com
fromm@bwst-law.com

*Attorneys for Defendants Continental Automotive Systems, Inc., ContiTech North America, Inc., and Continental Tire the Americas, LLC*

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and exact copy of the foregoing was served on the following individuals via the Court's CM/ECF system on June 3, 2020:

Eugene N. Bulso, Jr.
Paul J. Krog
Leader, Bulso & Nolan, PLC
414 Union Street, Suite 1740
Nashville, TN 37219
gbulso@leaderbulso.com
pkrog@leaderbulso.com

*/s/ W. Scott Sims*