# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONTINENTAL AUTOMOTIVE ) <br> SYSTEMS, INC. (successor to Continental ) <br> Teves, Inc.); CONTITECH NORTH ) <br> AMERICA, INC.; and CONTINENTAL ) <br> TIRE THE AMERICAS, LLC (successor to ) <br> Continental Tire North America, Inc.) ) <br> ) <br> Defendants. ) <br> ) | No. 3:19-cv-0396 <br> JUDGE ALETA A. TRAUGER <br> MAGISTRATE JUDGE NEWBERN <br><br> **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS CONTINENTAL AUTOMOTIVE SYSTEMS, INC.'S CONTITECH NORTH AMERICA, INC.'S AND CONTINENTAL TIRE THE AMERICAS, LLC'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

**I. BACKGROUND**

Below, Continental confirms its fulsome production of responsive documents organized by category and subject matter. First, however, Continental needs to address two foundational flaws in Nissan's arguments regarding design responsibility for the braking system at issue and its woefully deficient document production in this matter.

### A. Nissan, Not Continental, Designed and Validated the Vehicle Braking System at Issue

Continental's own motion to compel explains in detail that, as the brake system's integrator, Nissan designed and validated the braking system for the vehicle involved in the *Bernardino* litigation (the "Subject Vehicle") (Dkt. 109, Continental Mot. at p. 6-8). A brake system's integrator incorporates the various brake components, assemblies, and sub-systems into

an integrated system and is responsible for ensuring those components, assemblies, and sub-systems function together and as intended. Nissan's integrated system therefore reflects Nissan's choices, priorities, and specifications for that system, its multiple sub-systems, and its various components and assemblies. Nissan purchased those sub-systems, components, and assemblies from multiple suppliers. Continental was just one of many.

The brake components and assemblies supplied by Continental for the Subject Vehicle are known as the actuation control unit ("ACU" or "Brake Booster Assembly"), the integrated control unit ("ICU"), and a yaw rate sensor. Continental did not supply the numerous other brake components and assemblies that comprise the complete and integrated brake system, including the wheel speed sensors, the pedal assembly, the corner module (which includes the brake calipers, rotors, and pads), wheel bearings, and knuckles. Nissan purchased them from other suppliers. In doing so, Nissan also made critical choices regarding:

- brake component sizing,
- hardware and software configuration,
- component and assembly function,
- target performance and "feel" characteristics for each component and assembly, and
- the braking system as a whole.

After it specified the various components and assemblies and selected who would supply each of them, Nissan's brake system teams in the United States and Japan combined them into an integrated braking system. Those teams developed, tested and tuned the braking system as an integrated whole. The behavior and feel of that integrated system therefore each bear Nissan's indelible stamp.

Contrary to the role it tries to sell in its moving papers, Nissan's witnesses in the *Bernardino* litigation provided considerable sworn testimony confirming Nissan's brake system design, development and systems integration activities. When Nissan's Senior Engineer, Andrew Smith, was asked at his deposition which components within the "brake system" he was involved in designing, Mr. Smith testified "[f]oundation brakes mainly, which included the corner modules, which was the calipers, rotors, knuckles, hubs and bearings, brake tubes, actuation, master cylinder, and then the master back block." (CAS Mot. Ex 4, Smith Dep. Tr.). When asked under oath if " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " Nissan's corporate representative, James Blenkarn, confirmed " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " (Ex. 1, Blenkarn Dep. Vol. III at p. 615-616). Nissan's documents tell the same story. A sample follows:

| Source | Design and Development Records | Responsible Entity/Entities |
|---|---|---|
| Nissan Purchase Orders (Ex. 2, TN-NNA-CAS 00000244.001-00000250.002) | The only purchase orders identified by Nissan include purchase orders for specific braking component-parts, including an Actuation Unit, Integrated Control Unit, and yaw rate sensor (there are no design or development purchase orders for a "braking system"). | Nissan North America |
| Nissan Brake System Test Report (BB-TN-BBW 00012790.0001) | Nissan and Nissan Japan agreed to have "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (CAS Mot. Ex. 3). | Nissan North America and Nissan Japan |
| Nissan Brake System Test Report (BB-TN-BBW 00012790.0001) | Nissan's Japanese engineers Yuuichi, Fumio, Atsutoshi, and Ishida, and Nissan KDB and KJ6 departments performed "▮▮▮▮▮▮▮▮▮▮▮" of the brake system and pedal feel and expressed concerns regarding performance, feel and sizing. (*Id.*) | Nissan Japan KDB and KJ6 departments |
| Nissan's Verified *Bernardino* Discovery | Nissan confirmed "the activation of optimized hydraulic braking ("OHB") in the event of a DTC fault code was the result of the design and development process undertaken for this model line | Nissan Japan |

| Source | Design and Development Records | Responsible Entity/Entities |
|---|---|---|
| Responses (TN-NNA-CAS 00000627.0020) | during its initial development at Nissan Motor Co. Ltd, in cooperation with Continental entities in Japan in the early 2000s." (CAS Mot. Ex. 2, at Joint Discovery Statement Ex. 6). | |
| Nissan *Bernardino* Witness Deposition Testimony (BB-TN-NNA-CAS 00000116.0001) | The "Nissan Technical Center Japan" "did the initial design work," "developed the braking and OHB strategy" and "validated the software performance of the OHB system." (CAS Mot. Ex. 4, Senior Nissan Engineer Andrew Smith). | Nissan Technical Center Japan |

### B. Nissan Has Produced Considerably Less than 100 Documents in this Litigation, Not Over 16,000

Nissan continues to misrepresent the number of documents it has produced in this litigation. It does so by attempting to claim the entire underlying *Bernardino* product liability case file as a "Nissan production." It is not. Nissan simply received that file through a subpoena to Nissan's outside lawyers from that case. And as noted in Continental's Joint Discovery Dispute Statement, about 30% of the pages in that case file are actually Continental productions and about 40% are deposition transcripts, exhibits, and pleadings. While the remaining 30% may have been produced by Nissan in the *Bernardino* litigation, they don't contain documents responsive to Continental's discovery requests in this case (especially requests related to Nissan's braking systems design, systems integration and validation activities) because nobody in the underlying *Bernardino* Litigation requested them. Moreover, the Nissan Defendant in that case objected to producing anything from its Japanese affiliates who did the bulk of that work in Japan.

4

## II. CONTINENTAL'S PRODUCTION IS RESPONSIVE AND ORGANIZED

Having now clarified the limited component and assembly supplier role that Continental played in the design and development of Nissan integrated braking system at issue, Continental will address the responsive documents it located and produced reflective of that role.

### A. Continental's Production is Organized by Subject Matter and Cross Referenced by Bates Number

Continental has produced and updated its production logs that are organized by request and include specific references to responsive documents and Bates ranges. For convenience in the context of this motion, Continental has color coded the production logs to correlate with the subject matter of Nissan's motion. Those logs are attached as Exhibit 3.

### B. Continental Provided Nissan Metadata for the Productions

When Continental examines the native documents it collected and produced to Nissan in the same format, it can view the metadata, including information about the author, file name, date, and last modified information. Pursuant to the parties' agreed production protocol, Continental's document production was made in single page TIFF format with load files for the Relativity database system. (Ex. 4). The Relativity load files contain the associated metadata, which also can be accessed in the native documents themselves under the "info" tab. Continental does not understand why Nissan's lawyers cannot view the metadata in the productions. Nissan has never requested assistance or a meet-and-confer to walk through that issue, but Continental is available to do so through its counsel.

### C. Continental Has Identified and Produced the Documents Identified in Nissan's Motion

#### 1. Commercial Documents, Including Quotations, Purchase Orders, and Communications

As set forth in Continental's production logs, Continental has produced Nissan's request for quotation for brake components and assemblies and Continental's responsive quotations, documents, and communications, all of which are highlighted in blue. Continental also produced the oldest version of any Nissan purchase orders it could locate for brake components in the X61A Program. (Ex. 3, (highlighted in blue)).

#### 2. Patent Documents Relating to Continental's Components and Assemblies

Continental has produced the patents requested by Nissan associated with the components and assemblies supplied to Nissan for the Subject Vehicle.[1] (Ex. 3, (highlighted in purple)).

#### 3. Specifications, Drawings, and Blueprints for Continental's Components and Assemblies

Continental's production includes the specifications, drawings, and blueprints associated with the components and assemblies supplied by Continental. These specifications, drawings, and blueprints are included in the engineering release files for the particular components and assemblies. (Ex. 3, (highlighted in green)).

#### 4. Design, Testing, and Validation Documents

Continental's production includes the design and development record for the Continental-supplied components and assemblies, including design validation documents and reports,

---

[1] The "8,033,618 Patent" Nissan claims applies to the ACU in the Subject Vehicle is incorrect because it describes different OHB hardware, software, and functionality than is incorporated into the Subject Vehicle.

performance validation documents and reports, "DFMEA" and "PFMEA," tests and reports concerning the assemblies and components, and production part approval process ("PPAP") documents and communications regarding the components and assemblies. (Ex. 3, (highlighted in orange)).

       **5.    Communications Regarding Continental's Components and Assemblies**

Nissan's statement that Continental's production consists "of only approximately (10) ten e-mails" is puzzling and inaccurate. Continental's productions in this matter and the *Bernardino* litigation include many hundreds of pages of internal and external emails, communications, and meeting minutes with Nissan employees in the United States and Japan concerning Continental's components and assemblies. These emails and communications are highlighted in yellow. (Ex. 3, (highlighted in yellow)).

## III.    CONCLUSION

Because Continental has (i) complied with its obligations under Fed. R. Civ. P. 26 to search for documents responsive to Nissan's discovery requests, (ii) made a robust production of documents responsive to those discovery requests, and (iii) set forth in detail the bates ranges of the documents in the *Bernardino* Litigation file and in its supplemental productions that contain the very documents and communications that Nissan claims has not been produced, this Court should deny Nissan's motion, and for the reasons stated above and in Continental's moving papers, the Court should grant Continental's motion.

Respectfully submitted,

Dated: August 27, 2020

*/s/ W. Scott Sims*
W. Scott Sims
SIMS FUNK, PLC
3322 West End Ave. #200
Nashville, TN 37203
(615) 454-9335

and

Herbert C. Donovan (*admitted pro hac vice*)
Andrew B. Fromm (*admitted pro hac vice*)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Ave. Suite 400
Birmingham, MI 48009
(248) 971-1800

*Attorneys for Defendants Continental Automotive Systems, Inc., ContiTech North America, Inc., and Continental Tire the Americas, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on the following individuals via the Court's CM/ECF system on August 27, 2020:

Eugene N. Bulso, Jr.
Paul J. Krog
Leader, Bulso & Nolan, PLC
414 Union Street, Suite 1740
Nashville, TN 37219

*/s/ W. Scott Sims*